UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____
                                       )
IN RE BAUSCH & LOMB INCORPORATED )
ERISA LITIGATION                       )
                                       )CASE NO.: 06-CV-6297
_____)

## INTRODUCTION

Participants in employer-sponsored investment plan sued employer, Bausch & Lomb ("B&L") members of its board of directors, and members of plan's investment committee, alleging that defendants breached their fiduciary duties to the plan in violation of the Employee Retirement Income Security Act ("ERISA"). Specifically, plaintiffs allege in Count I of the Consolidated Class Action Complaint For Violations Of The Employee Retirement Income Security Act (the "CEC" and/or "Complaint") that defendants allegedly breached their fiduciary duty of prudence because they did not remove the company stock fund ("B&L Stock Fund") from the Bausch & Lomb 401(k) Account Plan (the "Plan") when the price of B&L stock allegedly became artificially inflated through fraud. In the Second Count, plaintiffs allege that defendants allegedly breached their fiduciary duty to disclose by engaging in and/or failing to alert participants to alleged material misrepresentations regarding B&L's business and financial conditions that artificially inflated the price of B&L stock. The Complaint alleges in Count III that certain defendants are alleged to have breached their fiduciary duty to monitor by their failure to remove those fiduciaries who allegedly breached their fiduciary duties of prudence and disclosure. In addition, Count IV alleges that defendants are liable as co-fiduciaries to the extent they are not liable directly for the other-mentioned breaches. Further,

plaintiffs allege in Count V that B&L is liable as a knowing participant in the alleged breaches of fiduciary duty of other defendants. B&L is also alleged to be liable as a *de facto* fiduciary or via *respondeat superior* theory for the alleged breaches of fiduciary duty by agents of B&L who were Plan fiduciaries.

By motion dated April 7, 2008, defendants moved to dismiss plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants claim that the plaintiffs' Complaint fails to state a claim upon which relief may be granted. For the reasons set forth below, I hereby grant defendants' motion to dismiss, and dismiss plaintiffs' Complaint with prejudice.

## BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiffs' Complaint, including documents incorporated by reference therein. See McCarthy v. The Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (On a motion to dismiss, a court may consider the complaint, attached exhibits and undisputed authentic documents upon which plaintiff's claims are based).[1]

### I.   **Plaintiffs and Defendants Named in the Complaint**

Plaintiffs allege that they participated in the Plan and invested in the B&L Stock Fund. They bring this action to recover losses suffered by the Plan on behalf of a putative class that consists of all

---

[1]A court may take judicial notice of SEC filings, other federally regulated filings, public statements by government authorities, and publicly quoted stock prices without converting a Rule 12(b)(6) motion to one for summary judgment under Rule 56. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007).

persons, other than defendants, who were participants in, or beneficiaries of, the Plan from May 25, 2000 to May 3, 2006 (the "Class Period"), and whose accounts included investments in the B&L Stock Fund. Defendants named in the Complaint are certain Plan committees and current and former members of those committees.[2]

## II.  **The Plan**

The Plan is an "employee pension benefit Plan" within the meaning of ERISA §3(2)(A), 29 U.S.C. §1002(2)(A). See CEC, ¶33. It is also an "eligible individual account plan" ("EIAP"), which is a contribution plan as defined under ERISA § 3(34), 29 U.S.C. §1002(34), in which each employee has his own account, chooses his own investment options for contributions and bears the risk of investment gain or loss. See Declaration of Nicole A. Eichberger ("Eichberger Decl."), Exs. A, B, and C. The Complaint alleges that the Plan's Investment Policy sets forth the purpose of the Plan to facilitate and promote retirement savings: "The Plan was established for the purpose of providing retirement income to eligible employees of [B&L]." See CEC, ¶34. In

---

[2] Defendants in the Complaint include: Bausch & Lomb Incorporated ("B&L"), William M. Carpenter, former President and Chief Executive Officer ("Carpenter"), Ronald L. Zarrella, former Chief Executive Officer, President and Chairman of the Board of Directors ("Zarrella") (both Carpenter and Zarrella are referred to as "Director Defendants"), Employee Benefits Administration Committee (the "Administration Committee"), members of the Administration Committee include Carpenter; Gina E. Campbell, Manager, ("Campbell"); Daryl M. Dickson, Senior Vice-President, Human Resources until 2002, ("Dickson"); J. Calven Howell ("Howell"); Jurij Z. Kushner, former Corporate Vice-President and Controller, ("Kushner"); Stephen C. McCluski, former Senior Vice-President and Chief Financial Officer, ("McCluski"), David R. Nachbar, former Senior Vice President Human Resources, ("Nachbar"); Alan H. Resnick, former Corporate Vice President and Treasurer, ("Resnick"); Susan A. Roberts, former Vice President and General Counsel, ("Roberts"); Robert B. Stiles, Senior Vice President and General Counsel, ("Stiles"); Jennifer Vossler, former Vice President, Compensation and Benefits, ("Vossler"); Laurie L. Zaucha, former Vice President, Global Compensation and Benefits, ("Zaucha") (collectively referred to as "Administrative Committee Defendants"); and John and Jane Doe 1-10 (collectively "defendants").

addition, the Complaint asserts that the "Plan did not require that the [B&L] Stock Fund be included as an investment option." See id., ¶37.

The Plan is funded through both voluntary employee contributions and employer contributions. See Eichberger Decl., Ex. B. The Plan Participants were provided with a Summary Plan Description (the "SPD") describing the terms of the Plan. The SPD notified participants that they were responsible for the investment of funds in their accounts that were attributable to their contributions, and commencing in 2005, the employer contributions as well. See Eichberger Decl., Ex. A and B. In addition, the SPD informed participants of the risk ratings of each investment option under the Plan. See id. In this regard, the SPD advised that the B&L Stock Fund was undiversified and accordingly it was the riskiest investment option offered. See id.

Moreover, the Plan offered 14 investment options, one of which was the B&L Stock Fund, which functioned as an Employee Stock Ownership Plan ("ESOP"). See Eichberger Decl., Ex. B. During the Class Period, participants had the option of moving their contributions in and out of all 14 investment options, including the B&L Stock Fund, at any time. See id. Further, both the base and matching employer contributions were made in B&L stock and invested in the B&L Stock Fund. See id. As of January 1, 2005, Plan participants were allowed to trade employer contributions out of the B&L Stock Fund at any time. See id.; see also CEC, ¶44.[3] Prior to that time, employer contributions remained in the

---

[3]"[E]ffective January 1, 2005 ... Employer Contributions could be invested in the same way as Voluntary Contributions." See CEC, ¶44.

B&L Stock Fund until a participant reached age 55 and/or terminated his/her employment with the company. See id. In December 2005, when B&L announced that it would restate its financials, federal securities laws required that restrictions be placed on employees' abilities to acquire B&L stock, including stock offered for purchase through a 401(k) plan. See CEC, ¶55; Eichberger Decl., Ex. K. As a result, as of December 22, 2005, participants were no longer able to direct voluntary contributions into the B&L Stock Fund.

Pursuant to the Plan and the Plan of Delegation of Fiduciary Responsibility (the "Delegation"), the Employee Benefits Administrative Committee ("EBAC") who is the Plan Administrator and is a named fiduciary to the Plan, is charged with all the Plan's day-to-day administration, maintenance and communication functions. See Eichberger Decl., Ex. A. The Employee Benefits Investment Committee ("IC") is a named fiduciary and is in charge of overseeing the investment funds, choosing investment options for the Plan, and selecting and overseeing the Plan's trustee. See id.

### III. **Accounting Practices of B&L's Foreign Subsidiaries**

On October 26, 2005, B&L announced in a press release that its Audit Committee began an independent investigation into alleged misconduct by local managers at B&L Industria Otica, Ltda. in Brazil ("BLIO"). See CEC, ¶¶101-102. B&L reported in its 8-K disclosure that BLIO's general manager, controller and other employees had mischaracterized $600,000 in expenses to fund an unauthorized pension arrangement for themselves; avoided payroll tax obligations; and

misused corporate assets for personal benefit. See Eichberger Decl., Ex. N. The BLIO general manager and controller were terminated and B&L voluntarily reported these matters to the Securities and Exchange Commission ("SEC"). See id. As indicated in the press release, BLIO's sales accounted for just 0.9% of B&L's $2,223 million restated net sales for 2004. See id., Ex. O. In addition, B&L's December 22, 2005 press release also revealed that the Audit Committee started investigating revenue recognition practices at B&L Korea Ltd. ("BL Korea"). See CEC, ¶¶104-106. Similar to BLIO, BL Korea represented only a small portion of B&L's consolidated business, generating approximately 1.5% of B&L's 2004 net sales of $2,233 million, as restated. See Eichberger Decl. Ex. O. Nevertheless, B&L concluded that certain prior period financial statements were required to be restated. See CEC, ¶104. On February 7, 2007, B&L filed its Form 10-K for 2005. The 10-K presented restated financial data for 2001 through 2004.

### IV.  ReNu with MoistureLoc ("MoistureLoc")

B&L received clearance from the U.S. Food and Drug Administration ("FDA") for a new contact lens solution called MoistureLoc, which was introduced in the U.S. market in September 2004 and later in selected markets in Europe and Asia. See CEC, ¶135. On November 11, 2005, the Hong Kong Department of Health ("HKDH") notified B&L of a rise in the number of incidents of contact lens related fungal keratitis and that approximately 40% of patients interviewed reported using MoistureLoc. See id., ¶143. Moreover, in February 2006, the Singapore Ministry of Hospitals ("SMOH") advised B&L of a spike in fungal keratitis cases

involving MoistureLoc users. See id., ¶148. Within days, B&L voluntarily suspended sales of all ReNu products, including MoistureLoc, in Singapore and Hong Kong. See id., ¶150.

In March 2006 the first reports of eye infections in contact lens wearers were reported in the U.S. See id., ¶155. Following these reports, B&L carried out an investigation to determine the cause of the infections in collaboration with U.S. government agencies, public health authorities including the HKDH and SMOH and the U.S. Centers for Disease Control and Prevention ("CDC"). See id., ¶159. On April 10, 2006, B&L announced that it was voluntarily suspending shipments from the plant that manufactured the MoistureLoc sold in the U.S., Singapore and Hong Kong pending completion of the investigation. See id., ¶163. On May 15, 2006, B&L concluded that some aspect of the MoistureLoc formula increased the risk of fungal infection in unusual circumstances and it announced a permanent global recall of MoistureLoc.

## DISCUSSION

### I.   Defendants' Motion to Dismiss

In Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court disavowed the half-century old standard set forth in Conley v. Gibson that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46, (1957), (overruled by Bell Atl. Corp., 127 S.Ct. 1955 (2007)). Holding that "Conley's 'no set of facts' language has been questioned, criticized, and explained

away long enough," the Supreme Court expressly rejected the standard in favor of a requirement that the plaintiff plead enough facts "to state a claim for relief that is plausible on its face." <u>See</u> <u>Bell Atl. Corp.</u>, 127 S.Ct. at 1969, 1974. The Court explained that the complaint "must be enough to raise a right to relief above the speculative level." <u>See</u> <u>id.</u> at 1965. To be clear, <u>Bell Atlantic</u> does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." <u>See</u> <u>id.</u> at 1974.

The Second Circuit has interpreted <u>Bell Atlantic</u> to require "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." <u>See</u> <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir.2007). In applying this standard, the district court must still accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of plaintiff. <u>See</u> <u>Cleveland v. Caplaw Enter.</u>, 448 F.3d 518, 521 (2d Cir.2006); <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir.2005). In deciding a 12(b)(6) motion, the Court is confined to "the allegations contained within the four corners of the complaint." <u>See</u> <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir.1998). In addition, the Court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference" as well as any document on which the complaint relies heavily. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-153 (2d Cir.2002). "Of course, it may also consider matter of which judicial

8

notice may be taken under Fed.R.Evid. 201." See Kramer v. Time Warner, Inc., 837 F.2d 767, 773 (2d Cir.1991).

## II.  The Plaintiffs' Complaint Fails to State a Claim for Breach of Fiduciary Duty of Prudence Under ERISA.

The Plan includes, as an investment option for Plan Participants, the B&L Stock Fund. The B&L Stock Fund invests in shares of B&L stock to allow the B&L Stock Fund to buy or sell stock at the direction of Plan Participants. The plaintiffs claim that the defendants breached their fiduciary duty of prudence because they did not remove the B&L Stock Fund from the Plan when the price of B&L stock allegedly became artificially inflated through fraud. Programs, like the B&L Stock Fund, which encourage employee ownership of their employer's stock are recognized as furthering an independent and compelling Congressional objective. See Moench v. Robertson, 62 F.3d 553, 568 (3d Cir.1995) ("the concept of employee ownership constitute[s] a goal in and of itself"); Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1097 (9th Cir.2004) (recognizing Congressional goal to support employee investment in their employer's stock). The B&L Stock Fund, as an EIAP is also granted special treatment under ERISA which exempts it from any specific statutory diversification requirements. 29 U.S.C. 1104(a)(2) (noting that prudence by diversification requirements are not violated by "acquisition or holding of qualifying employer securities).

Under Moench, ESOPs are entitled to judicial deference for their decisions to invest assets in the stock of the sponsoring company. See Moench, 62 F.3d at 571. Because ESOPs require investment in a given

company's stock, they act like "a trust, where the trustee is directed to invest the assets primarily in the stock of a single company." See id. Under the deferential standard from Moench, as a general rule, fiduciaries of such ESOPs "'should not be subject to breach-of-duty liability for investing plan assets in the manner and for the purposes that Congress intended.'" See id. (quoting Martin v. Feilen, 965 F.2d 660, 670 (8th Cir.1992)). Despite this general rule, however, fiduciaries of these funds, are still required to "'exercise care, skill, and caution in making decisions to acquire or retain the investment.'" See id. (quoting RESTATEMENT (THIRD) OF TRUSTS § 228, cmt. (f)).

The plaintiffs argue that the discretionary standard from Moench should not apply here because the Plan "'permits' (rather than requires) fiduciaries to invest in company stock" and as such the fiduciary are merely exercising their discretion. See Pls. Br. at 6. Accordingly, plaintiffs contend that the defendants are not entitled to a presumption of prudence because the Plan did not mandate investment in B&L's Stock Fund. See id. While the Second Circuit has not specifically ruled on this issue, the Third Circuit has held that not all employee stock ownership plans are entitled to the deferential Moench standard of review, even for decisions to invest plan funds in the sponsoring employer's securities. In In re Schering-Plough Corp. ERISA Litigation, 420 F.3d 231 (3d Cir.2005), the Third Circuit held that the Moench standard is "inapposite" to employer-sponsored retirement plans where the company is "'simply permitted to make ...

10

investments' in 'employer securities.'" See <u>Schering-Plough</u>, 420 F.3d at 238, n. 5 (quoting <u>Moench</u>, 62 F.3d at 571).

Unlike the plan at issue in <u>Schering-Plough</u>, however, the Plan at issue here requires that the B&L Stock Fund be offered as one of the investment options of the Plan. The governing documents for the Plan mandate that "The Investment Committee shall direct the Trustee to maintain the Bausch & Lomb Common Stock Fund and one or more other funds that the Investment Committee in its sole discretion decides from time to time to make available as investment options under the Plan."[4] <u>See</u> Eichberger Decl., Ex. A, §6.3(a). Where EIAPs, like this Plan, require the investment of plan funds in employer securities, just as required by an ESOP, "it would seem appropriate to give the same deference in either case to fiduciary decisions that conform to the demands of the plan." <u>See</u> <u>In re Honeywell Int'l ERISA Litig.</u>, 2004 WL 3245931, *11 n. 15 (D.N.J. 2004); <u>see also</u> <u>Edgar v. Avaya, Inc.</u>, 503 F.3d 340, 347-348 (3d Cir. 2007). Accordingly, this Court finds that the abuse of discretion standard from <u>Moench</u> is directly applicable to the defendants' decisions to continue offering and maintaining investments from the Plan in B&L stock throughout the Class Period.

To overcome the presumption from <u>Moench</u>, that the defendants' continued investment of the B&L Stock Fund's assets in B&L stock was consistent with their fiduciary duties under ERISA, the plaintiffs

---

[4]Plaintiffs argue that this language evidences discretion on the part of the fiduciaries and not language that ties a fiduciaries hands. However, consistent with the settlor's intent that the Plan offer and maintain the B&L Stock Fund, §6.3(b) of the Plan further provides that "All Participating Employer base and matching contributions *shall* be invested in this Fund." (See Eichberger Decl., Ex. A, § 6.3(b)) (emphasis supplied). Accordingly, this does not make the investments in the B&L Stock Fund discretionary.

would need to demonstrate that the defendants abused their discretion by making these investments. See id. Further, Moench and its progeny have established that the presumption of prudence is rebutted only when a company's overall viability appear to be in jeopardy. See Edgar, 503 F.3d at 348-49 (granting motion to dismiss because plaintiffs' claims failed to allege a "dire situation" to overcome the Moench presumption); Ward v. Avaya, Inc., 2008 WL 4888494 at *4 (3d Cir. 2008) Pugh v. Tribune Co., 521 F.3d 686, 701-702 (7th Cir.2008) (granting motion to dismiss because plaintiffs' claims failed to allege company's financial condition warranted plan fiduciaries to override terms of plan); Crowley v. Corning, Inc., 234 F.Supp.2d 222, 230 (W.D.N.Y. 2002) (granting motion to dismiss because plaintiffs alleged no facts that could overcome presumption).

Here, plaintiffs' fiduciary breach claims are predicated on broad allegations that B&L issued misleading statements about its business and financial conditions that allegedly caused the price of B&L stock to be inflated. See CEC, ¶¶214-230. This, however, is insufficient to constitute a breach of fiduciary duty by the defendants. "Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the Moench presumption." See Wright, 360 F.3d at 1099 (citing Kuper v. Iovenko, 66 F.3d 1447, 1459-60 (6th Cir.1995)). The plaintiffs are essentially arguing, in hindsight, that the defendants should have divested the Plan of their B&L stock holdings in late 2005 and early 2006 when the

accounting and MoistureLoc disclosures were occurring and the B&L stock price closed at approximately $41.19.[5]

The <u>Moench</u> standard does not require fiduciaries to diversify their EIAP holdings before or after each major corporate development, "it merely requires fiduciaries to act reasonably." <u>See</u> <u>Wright</u>, 360 F.3d at 1099. Even if the plaintiffs' allegations were true and even if the alleged fraud were known to the Plan's fiduciaries, the allegations would not have led a reasonable Plan fiduciary to conclude that B&L's financial condition was in the type of jeopardy that would have caused the Plan drafters to discontinue participant discretion to invest in and out of the B&L Stock Fund and instead discontinue that Fund altogether. <u>See</u> Eichberger Decl., Exs. O and Q; CEC ¶136. The allegations in the plaintiffs' Complaint simply do "not present a situation where a company's financial situation is seriously deteriorating and there is a genuine risk of insider self-dealing" which could call into question the fiduciary propriety of continued investment in the Company's securities.[6] <u>See</u> <u>Wright</u>, 360 F.3d at 1098. Further, the alleged misrepresentations that are claimed to have inflated the price of the B&L stock did not reach a magnitude that

---

[5]As in <u>Edgar</u> and <u>Pugh</u>, the actual movement of B&L stock confirms that any alleged accounting problems and MoistureLoc disclosures did not draw into question the soundness of the stock as a long-term investment. In late 2005 and early 2006 when the accounting problems and MoistureLoc issues were disclosed, B&L's stock never closed below $41 per share. This was a price that was above its class-period low point of $27.79 on July 23, 2002.

[6]In fact, effective January 2005 (several months before any drop in B&L stock complained of by plaintiffs) the Plan drafters extended participant discretion concerning the B&L Stock Fund, insofar as they accorded participants the right to extinguish their holdings in the portion of the B&L stock Fund attributable to employer contributions. Participant discretion concerning the Fund was interrupted only insofar as the Securities Laws required a discontinuation of participant contributions, effective December 22, 2005, and even then the Plan permitted participants to withdraw their investments at their discretion. <u>See</u> Eichberger Decl., Exs. A, K.

would have caused the Plan's fiduciaries to conclude that B&L's financial condition required divestiture of the B&L Stock Fund. <u>See</u> <u>Edgar</u>, 503 F.3d at 348-49; <u>Pugh</u>, 521 F.3d at 701-702; <u>Crowley</u>, 234 F.Supp.2d at 230; <u>Wright</u>, 222 F.Supp.2d 1224, 1233-1234 (D.Oregon 2002), aff'd, 360 F.3d at 1097-1098. The plaintiffs cannot, therefore, sustain their claim that the defendants breached their fiduciary duty of prudence by maintaining the Plan's investments in B&L stock solely on the basis of the allegations in the Complaint. Thus, plaintiffs' prudent investment claim is dismissed.

### III. <u>The Plaintiffs' Complaint Fails to State a Claim for Breach of Fiduciary Duty in Count II of The Complaint</u>.

The Second Count of the Complaint alleges claims for breach of fiduciary duty to disclose information brought against all defendants on the grounds of the failure to provide Plan Participants adequate information regarding their investment in the B&L Stock Fund. In addition, plaintiffs assert a breach of fiduciary duty for failure to disclose additional material consisting of nonpublic information concerning B&L's financial condition and the true value of the B&L stock. <u>See</u> CEC, ¶¶231-242. Defendants offer several reasons as to why Count II fails as a matter of law. First, they argue that none of the allegedly misleading disclosures constituted ERISA fiduciary communications because the statements were made in the course of ordinary business functions unrelated to administering the ERISA plan and thus are corporate disclosures. In this vein, defendants argue that the allegedly misleading statements fall within the scope of federal securities laws, but not ERISA. Second, defendants argue that Count II

must be dismissed because the fiduciary responsible for communications to Plan Participants, the EBAC, is not alleged to have had any responsibility, fiduciary or otherwise, for corporate disclosures. In addition, plaintiffs do not allege that the EBAC was responsible for any of the alleged misleading disclosures cited in the Complaint.

### A.   Claims Arising from B&L's Public Disclosures

Plaintiffs assert that certain statements made by defendants, including various documents filed with the SEC, contained material misrepresentations and that defendants breached their fiduciary duties to Plan Participants by preparing and distributing Plan-related communications that incorporated these allegedly misleading statements. The Complaint further alleges that the Plan-related communications which plaintiffs relied on include S-8 forms[7] filed with the SEC during the Class Period and the SPD. Defendants attack plaintiffs' incorporation by reference theory on two grounds. First, they argue that because the S-8 form is required by federal securities laws, rather than ERISA, the act of preparing and distributing the document could not have been an ERISA fiduciary action.[8] Second, they argue that while preparing and distributing an SPD is undoubtedly an ERISA

---

[7]The Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77a et seq., requires SEC registrants to file a form S-8 when, inter alia, the registrant's securities are to be offered under any employee benefit plan to its employees. SEC Form S-8, available at http:// www.sec.gov/about/forms/forms-8.pdf.

[8]ERISA permits fiduciaries to wear "two hats"--one in the capacity as a corporate officer, employee, or agent, and another in the capacity as an ERISA fiduciary. See 29 U.S.C. § 1108(c)(3); see also Pegram v. Herdrich, 530 U.S. 211, 225 (2000); In re Worldcom, Inc. ERISA Litig., 263 F.Supp.2d 745, 757 (S.D.N.Y.2003). Thus, in cases alleging a breach of an ERISA fiduciary duty, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." See Pegram, 530 U.S. at 226.

fiduciary action, the fact that the SPD incorporates by reference B&L's SEC filings does not alter the conclusion that the SEC filing is a corporate disclosure and not part of the fiduciary disclosure.

In Varity Corp. v. Howe, 516 U.S. 489 (1996), the Supreme Court held that statements concerning a company's financial condition become subject to ERISA fiduciary duties only if they are made in an ERISA fiduciary capacity, which means that the statements are made by the plan administrator and are intentionally connected to statements regarding a plan's benefits. See id. Following Varity, courts have dismissed ERISA claims alleging breaches of fiduciary duty to disclose in the employer stock context where the challenged statements consisted of SEC filings and statements made to the market. This is so because the filings and statements were made in a corporate and not ERISA fiduciary capacity. See Crowley, 234 F.Supp.2d at 228 (holding statements to the market were not made in a fiduciary capacity); Hull v. Policy Mgmt. Sys. Corp., 2001 WL 1836286, at *8 (D.S.C. 2001); In re WorldCom, Inc., ERISA Litig., 263 F.Supp.2d at 760. Accordingly, the duties of disclosure owed to the Plan by the defendants are not based on the duties owed by an ERISA fiduciary to a Plan and its participants, but the general duties of disclosure owed by a corporation and its officers to the corporations's shareholders.

Here, the Court is persuaded by defendants' assertion and the cited case law that the SPD's incorporation by reference of B&L's SEC filings does not alter the above conclusions. Further, the securities laws require that Plan Participants are offered access to SEC filings

that are provided to potential purchasers or owners of the employer's stock. This requirement is usually fulfilled by incorporating be reference a company's SEC filings into the plan's prospectus/SPD. See 15 U.S.C. §77j; Securities Act, Rule 427, 17 C.F.R. §230.428. Thus, plaintiffs' claim for breach of fiduciary duty arising from B&L's federal securities disclosures fails as a matter of law.

### B.    Disclosure of Non-Public Information

ERISA liability "arises only from actions taken or duties breached in the performance of ERISA obligations." See In re WorldCom, 263 F.Supp.2d at 760 (citing Pegram, 530 U.S. at 225-26). B&L and the Director Defendants, however, had no duty under ERISA to communicate or otherwise present investment information to Plan Participants. Under the terms of the Plan's governing documents, the only entity assigned responsibility for Plan communications was the EBAC. Under III.A.2 of the Delegation document, the EBAC is responsible to "[c]ommunicate benefits, including ... plan documents, plan amendments, summary plan descriptions, summary annual reports, material modifications, announcement of new or changed plans[.]." See Eichberger Decl. Ex. L, BOL-ERISA 00585. Accordingly, the EBAC is charged with the Plan's day-to-day administration and communication functions. Thus, plaintiffs' are attempting to state a claim for a breach of duty against B&L and the Director Defendants under ERISA where no such duty exists.

Moreover, the Complaint alleges no specific facts suggesting that the EBAC which consists of the Administration Committee and the Administrative Committee Defendants were aware of any material

information regarding the financial condition of B&L other than what was publicly disclosed. See CEC, ¶¶231-242. Accordingly, the allegations set forth against the Administration Committee and the Administrative Committee Defendants qualify as "unwarranted inferences" and "unsupported conclusions" "cast in the form of factual allegations" that a Court may reject when examining 12(b)(6) motions to dismiss. See Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1357 (2d ed. 1997); see also Crowley, 234 F.Supp.2d at 229 ("A complaint that contains only conclusory allegations and lacking any factual assertions for support fails even the liberal standard of [Rule 12(b)(6)") (citing DeJesus v. Sears Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir.1996).

Further, even assuming that all of the defendants had ERISA disclosure obligations and possessed undisclosed information concerning B&L's financial condition, there would still be no legal basis to support plaintiffs' claim. Defendants, as ERISA fiduciaries of the Plan, "may not knowingly present false information regarding a plan investment option to plan participants. There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock." See In re WorldCom, Inc., 263 F.Supp.2d at 766; see also Martinez v. Schlumberger, Ltd., 338 F.3d 407, 425 (5th Cir.2003) ("When an ERISA plan administrator speaks in its fiduciary capacity concerning a material aspect of the plan, it must speak truthfully"); Mullins v. Pfizer, Inc., 23 F.3d 663, 668 (2d Cir.1994) (same).

ERISA imposes a "legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection. The scope of that duty to disclose is governed by ERISA's Section 404(a), and is defined by what a reasonable fiduciary, exercising 'care, skill, prudence and diligence,' would believe to be in the best interest of the beneficiary to disclose." See Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc., 93 F.3d 1171, 1182 (3d Cir.1996); see also Bins v. Exxon Co. U.S.A., 189 F.3d 929, 939 (9th Cir.1999) ("We believe that once an ERISA fiduciary has material information relevant to a plan participant or beneficiary, it must provide that information whether or not it is asked a question."), on rehearing en banc, 220 F.3d 1042, 1048-49 (9th Cir.2000) (when a proposed change in retirement benefits becomes sufficiently likely and therefore material, the employer has a duty to provide complete and truthful information); Schmidt v. Sheet Metal Workers' Nat. Pension Fund, 128 F.3d 541, 546-47 (7th Cir.1997) ("A plan fiduciary may violate its duties ... either by affirmatively misleading plan participants about the operations of a plan, or by remaining silent in circumstances where silence could be misleading."), cert. denied, 523 U.S. 1073 (1998).

The Second Circuit has not had occasion to define the scope of an ERISA fiduciaries' duty to disclose non-public information concerning the employer's financial situation. But see Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 88 (2d Cir.2001) (holding that a plan

administrator breaches his fiduciary duty when he misrepresents the terms of a plan or "fails to provide information when it knows that its failure to do so might cause harm" (quoting In re Unisys Corp. Retiree Med. Benefit ERISA Litig., 57 F.3d 1255, 1264 (3d Cir.1995)). Here, the allegations of the Complaint demonstrate that defendants did not affirmatively misinform the Plan Participants of the risks associated with investing in the B&L Stock Fund. Indeed, the SPD, clearly informed the Plan Participants that they were responsible for the investments they could select, that the B&L Stock Fund was the riskiest of the 14 investment options and that the B&L Stock Fund was undiversified. Further, plaintiffs do not allege any basis for claiming that disclosures were needed to correct or to supplement Plan documents and Plan communications previously made to participants pursuant to ERISA. See CEC, ¶¶ 231-242. Thus, the Second Count fails to assert a viable claim for non-disclosure.

Further, had defendants released any adverse information they had regarding events that eventually led to the restatement of the financial information to the public and the recall of MoistureLoc in advance of informing the market, such a disclosure to the Plan Participants before the information was disclosed to the public would have been in violation of federal securities law that prohibit trading on nonpublic adverse information. See Nelson v. Hodowal, 512 F.3d 347, 350-351 (7th Cir.2008) (no affirmative duty to provide participants with inside information as to executives' company stock trading

patterns beyond securities laws); <u>Edgar</u>, 503 F.3d at 349-351. Therefore, plaintiffs' disclosure claims in Count II are dismissed.

**IV.  <u>The Complaint Fails to State a Claim for Breach of Fiduciary Duty to Monitor</u>.**

Count III of the plaintiffs' Complaint alleges that certain defendants breached their duty to monitor the actions of appointed Plan fiduciaries. <u>See</u> CEC, ¶¶65-73, 243-252. Under ERISA, fiduciaries who have appointed other fiduciaries have a continuing duty to monitor the actions of the appointed fiduciaries. <u>See</u> <u>Coyne & Delany Co. v. Selman</u>, 98 F.3d 1457, 1465 (4th Cir.1996) ("The power...to appoint, retain and remove plan fiduciaries...carries with it a duty 'to monitor appropriately' those subject to removal"); <u>see</u> <u>also</u> <u>In re RCN Litig.</u>, 2006 WL 753149, *9 (D.N.J. 2006) (power to appoint fiduciaries is itself a fiduciary function). However, "[t]he duty to monitor carries with it...the duty to take action upon discovery that the appointed fiduciaries are not performing properly." <u>See</u> <u>Liss v. Smith</u>, 991 F.Supp. 278, 311 (S.D.N.Y.1998); <u>see</u> <u>also</u> <u>In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.</u>, 312 F.Supp.2d 1165, 1176 (D.Minn. 2004) ("Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees"); <u>Leigh v. Engle</u>, 727 F.2d 113, 134-35 (7th Cir.1984) (implicit in the power to appoint and remove fiduciaries is the duty to monitor). Because the plaintiffs' Complaint fails to state a claim for breach of fiduciary duty by any of the Plan's fiduciaries, the plaintiffs' claims for failing to adequately monitor these fiduciaries must also be dismissed.

Further, the duty to monitor also includes a duty to take action upon discovery that appointed fiduciaries are not performing properly. See Liss, 991 F.Supp. at 311. Plaintiffs allege that §7.1 of the Plan gives the Director Defendants the responsibility "to appoint and monitor members of the Administrative Committee and the Investment Committee." See CEC, ¶68. Plaintiffs also allege that the "Board had the authority to appoint, remove and accept the resignation of the committee members." See id. Plaintiffs allege that B&L, the Director Defendants and the Administrative Committee breached the duty to monitor, inter alia, by failing to monitor the performance of the appointed fiduciaries with respect to the Plan's investments; by failing to ensure that the monitored fiduciaries appreciated the extent of B&L's misrepresentations and nondisclosures regarding the risks of ReNu and the financial condition of the company. See CEC, ¶¶242-252.

Plaintiffs must allege facts that the (1) entity charged with the breach was responsible for appointing and removing fiduciaries responsible for fiduciary conduct in question; and (2) entity charged with this duty to monitor also had knowledge of or participated in fiduciary breaches by the appointees. See RCN Corp., 2006 WL 753149, at *6-8; Edgar v. Avaya, Inc., 2006 WL 1084087, at *11-12 (D.N.J. 2006); In re Dynegy, Inc. ERISA Litig., 309 F.Supp.2d 861, 900-904 (S.D.Tex. 2004). Here, as discussed above, the Court has found that plaintiffs have failed to state a claim for breach of fiduciary duty by any of the Plan's fiduciaries. Thus, the second prong of the test is not met and on this alternative basis, Count III of the Complaint is dismissed.

22

**V.   The Complaint Fails to State a Claim for Breach of Co-Fiduciary Liability.**

In Count IV, plaintiffs seek to hold all defendants liable for the breaches of duty committed by their co-fiduciaries. Section 405(a) of ERISA permits for joint and several liability only under certain circumstances:

> (1) if [the fiduciary] participates knowingly in, or knowingly undertakes to conceal, an act or omission of [another] fiduciary, knowing such act or omission is a breach;
>
> (2) if, by [the fiduciary's] failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled [another] fiduciary to commit a breach; or
>
> (3) if [the fiduciary] has knowledge of a breach by [another] fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). Count IV of the Complaint alleges that all the defendants in this case were liable as co-fiduciaries by violating the co-fiduciary liability under § 1105(a). See CEC at ¶¶253-266. The claim of co-fiduciary liability, however, must co-exist with some breach by a fiduciary of their duties under ERISA. For the reasons noted above, however, the Plaintiffs' Complaint fails to set forth an adequate claim that any of the fiduciaries breached their duties under ERISA as it relates to the administration of the Plan. Thus, plaintiffs' claims under § 1105(a) for co-fiduciary liability also cannot be sustained. See Edgar, 2006 WL 1084087, at *12.[9]

---

[9] Plaintiffs cite In re Marsh ERISA Litig., 2006 WL 3706169, at *5 (S.D.N.Y. 2006) for the proposition that "similar allegations tracking ERISA's statutory language are sufficient at the pleading stage." See Pls. Br. at 22.

**VI.    The Claim Against B&L as a _De Facto_ Fiduciary and the _Respondeat Superior_ Claim Is Dismissed.**

Plaintiffs argue that because B&L's agents either acted as fiduciaries or performed fiduciary functions, B&L is liable as a _de facto_ fiduciary pursuant to ERISA §3(21)(A), 29 U.S.C. §1002(21)(A). See Pls. Br. at 21-22. It is well-settled that this Circuit does not recognize _de facto_ fiduciary status. See Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir.1998) (Second Circuit held that an employer cannot be held liable as a _de facto_ fiduciary, where in accordance with ERISA, the employer has designated specific individuals or entities to serve as fiduciaries). Here, B&L is not the Plan's "administrator" under ERISA. See 29 U.S.C. 1002(16)(A)(i). The SPD expressly states that "[t]he Committee shall administer the Plan in accordance with its terms[.]" See Eichberger Decl., Ex. A. BOL-Erisa 00051.[10] Pursuant to the Delegation document, the EBAC, who is the Plan Administrator and is a named fiduciary to the Plan, is charged with all the Plan's day-to-day administration, maintenance and communication functions. The IC is in charge of overseeing the investment funds and choosing investment options for the Plan. Accordingly, plaintiffs may not pursue a _de facto_ fiduciary breach claim against B&L.

---

However, the case law cited by plaintiffs is distinguishable in that those courts held that the plaintiffs in those cases sufficiently pled prudent investment and disclosure claims against the defendants. This is not the case in the present action where the Court has held that plaintiffs have failed to state claims for breach of fiduciary duty of prudence and breach of fiduciary duty regarding disclosure claims.

[10] §7.2 of the SPD also states "The Committee shall be the named fiduciary and plan administrator as to the administration aspects of the Plan, and the Investment Committee shall be the Named Fiduciary with respect to the control and management of the aspects of the Plan, as these terms are used in ... [ERISA]."

Moreover, plaintiffs contend that B&L is subject to liability for the torts of its employees committed while acting within the scope of their employment under the theory of *respondeat superior*. <u>See</u> Pls. Br. at 22. However, as discussed above, because plaintiffs have not been able to establish a basis for fiduciary breach claims against the Plan fiduciaries or B&L's agents and employees (<u>see</u> Points II, III, IV and V) then B&L cannot vicariously be subject to liability which does not exist. <u>See</u> <u>NLRB v. Amax Coal Co.</u>, 453 U.S. 322, 331-332 (1981). Thus, plaintiffs' *respondeat superior* claim is be dismissed.

**VII. <u>"Knowing Participation" Claim is Dismissed</u>.**

Count V of the Complaint asserts an alternative claim against B&L for knowing participation in a breach of fiduciary duty. <u>See</u> CEC, ¶¶267-271. To prevail on their claims against B&L as a non-fiduciary for their knowing participation in a fiduciary's breach, plaintiffs must establish (1) that the fiduciaries breached their duties; (2) that B&L knowingly participated in the breaches and (3) damages. <u>See</u> <u>Liss</u>, 991 F.Supp. at 305; <u>see</u> <u>also</u> <u>Diduck v. Kaszycki & Sons Contractors</u>, 974 F.2d 270, 281-82 (2d Cir.1992).

As discussed above, plaintiffs have failed to establish as a matter of law that the Plan fiduciaries have breached their duties. In addition, the Complaint fails to allege that B&L knowingly participated in the breaches. In this regard, the Complaint does not allege how B&L or anyone working for B&L other than defendants who are already sued for fiduciary breach, "knowingly participated" as a non-fiduciary in the alleged fiduciary breaches, as the law requires. <u>See</u> <u>Harris Trust</u>

25

& Sav. Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 251 (2000) (liability for knowing participation in a fiduciary breach arises only when the transferee "knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust"); see also Liss, 991 F.Supp. at 305 ("Knowing participation" includes knowledge that the primary violator's conduct contravenes a fiduciary duty). The Complaint simply alleges that B&L benefitted from the inflation of the stock insofar as its matching contributions were less than what would have been required had the stock been trading at its real value. See CEC, ¶¶267-271.

With respect to the element of damages, plaintiffs contend that because B&L purchased the stock and contributed it to the B&L Stock Fund in the past, it has traceable funds today. However, as defendants point out, B&L stock is no longer traded publicly and the B&L Stock Fund no longer exists. In Coan v. Kaufman, 457 F.3d 250, 264 (2d Cir. 2006), the Court concluded that plaintiffs' request for "an injunction requiring the defendants to restore funds to the defunct 401(k) plan to be distributed to former participants, 'does not transform what is effectively a money damages request into equitable relief.'" Accordingly, plaintiffs' "knowing participation" claim is also not viable because the relief sought here is in the nature of damages for losses suffered in connection with plaintiffs' holdings in the B&L Stock Fund, which is monetary relief and ERISA § 502(a)(3), pursuant to which this claim is brought, permits only equitable relief. Thus, the claim against B&L in Count V of the Complaint is dismissed.

## CONCLUSION

For the reasons set forth above, I grant defendants' motion to dismiss plaintiffs' Complaint with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

        s/Michael A. Telesca
         MICHAEL A. TELESCA
       United States District Judge

Dated:  Rochester, New York
        December 12, 2008

27